Per Curiam.

On September 28, 1975, the Liberal Party held a Judicial Convention in the 10th Judicial District to nominate candidates for three vacancies in the offices of Justices of the Supreme Court to be filled at the 1975 general election. Certificates of nomination for the three candidates chosen, mailed on October 1, 1975 to the State Board of Elections, were rejected by the board as untimely under subdivision 5 of *557 section 143 of the Election Law, which required filing no later than September 30, 1975.
In this proceeding to compel the board to accept the certificates as valid, Special Term noted that the failure to file within the statutory period was the result of a mistake neither intentional nor prejudicial in nature. In referring to recent decisions treating the omission to timely file as a fatal defect, Special Term distinguished between those situations where an individual’s failure to file his certificate prejudices no one’s rights but his own, as to which it was stated that the provisions as to timely filing should be strictly construed against him, and those instances involving the timeliness of the filing of a certificate of nomination by a political party, involving the rights of a substantial portion of the electorate, as to which it was held that consideration must be given to each matter on its particular facts. In granting relief, it was concluded that here a sufficient reason was given for the "inconsequential delay of only 10 hours” and that the election processes of the board have not been impeded. The Appellate Division, in affirming, cited section 330 of the Election Law and Matter of Bates v Beyer (36 AD2d 735).
For years prior to May 10, 1969, subdivision 12 of section 143 of the Election Law (formerly subd 11) merely stated: "All papers required to be filed pursuant to the provisions of this chapter shall be filed between the hours of nine a. m. and five p. m. If the last day for filing shall fall on a legal holiday, such papers shall be accepted for filing on the next business day. All papers sent by mail in an envelope postmarked prior to midnight of the last day of filing shall be accepted for filing when received.” During those past years, compliance with the statutory time requirements covering the filing of various certificates under the Election Law was termed mandatory but it was recognized that the Election Law, by express provision as well as by judicial interpretation, did not fix "fatal finality” to the last day for filing such certificates in instances of errors or mistakes which in reason and justice should be corrected so that elections would be fair and the will of all electors ascertained (Matter of Lauer v Board of Elections of City of N. Y., 262 NY 416, 418-419; Matter of Darling, 189 NY 570; Matter of Andersen v Meisser, 14 AD2d 598, affd 10 NY2d 798; Abrahams, New York Election Law [1950], p 311; 1 Gassman, Election Law [1962], § 51, p 317 et seq.).
This legal interpretation in respect to the nonfatal charac *558 ter of untimely filings in certain instances was effectively nullified for the future, however, by the enactment of chapter 529 of the Laws of 1969, effective May 10, 1969, which amended subdivision 12 by adding thereto the following sentence: "The failure to file any petition or certificate relating to the designation or nomination of a candidate for party position or public office or to the acceptance or declination of such designation or nomination within the time prescribed by the provisions of this chapter shall be a fatal defect” (emphasis added). The Legislature’s intent of fixing "fatal finality” when it amended the subdivision in 1969 is evidenced in the memorandum of the Department of State in introducing the 1969 amendment:
"The bill will insure the prompt filing of petitions and certificates relating to the designation or nomination of candidates or to the acceptance or declination thereof by making the time limitations provided therefor absolute and not a matter subject to the exercise of discretion by the courts.
* * *
"The purpose of the election time-table is to establish an orderly progression of events culminating in the election of candidates to public office or party position. The mandatory nature of the provisions of the Election Law relating to the time for filing establishes the rules of the game, which should be applied to all with equal effect.
"The Legislature, in making the time limitations for filing mandatory, intended that such provisions be construed strictly. A liberal construction of such provisions would diminish their effect, resulting in confusion and inequality.
"The purpose of this bill is to overcome the trend of recent court decisions which have had the effect of impairing the mandatory nature of the time-table.
* * *
"It is therefore of paramount importance that it be made crystal clear that the time limitations for filing are mandatory.” (NY Legis Ann, 1969, pp 249-250.)
The ordering of the acceptance of this nominating certificate is contrary to the express language of subdivision 12, as amended. An attempt has been made to differentiate the holding in Matter of Conservative Party of State of N. Y. v Schwartz (45 AD2d 976, affd 34 NY2d 983 [1974]), involving an *559 individual’s failure to file, and the instant situation involving a party official's omission or neglect. Such a distinction is without basis and such reasoning overlooks the clear import of subdivision 12, embracing late filings of "any petition or certificate relating to the designation or nomination of a candidate for party position or public office or to the acceptance or declination of such designation or nomination” (emphasis added). Matter of Bates v Beyer (36 AD2d 735, supra), where the issue was the form of filing rather than the time of filing, is of no assistance to petitioner.
Section 330 of the Election Law vests jurisdiction in the Supreme Court to summarily determine any question of law or fact arising in respect to the nomination of any candidate, same to be construed liberally and with a direction to courts to make such order as justice may require. These provisions, however, do not permit a court to ignore the statutory mandate of subdivision 12 of section 143 of the Election Law, since the explicit language of the later statute control over the general words of the earlier enactment (Gwynne v Board of Educ., 259 NY 191, 197; East End Trust Co. v Otten, 255 NY 283, 286), this being especially so in this instance where it is apparent that the Legislature enacted the later statute to make "the time limitations provided therefor absolute and not a matter subject to the exercise of discretion by the courts.” In statutory interpretation, legislative intent is the great and controlling principle (Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38). Save for those instances where the literal meaning of words is not to be so slavishly adhered to as to defeat the general purpose and manifest policy intended to be promoted (see Williams v Williams, 23 NY2d 592, 599; Matter of Capone v Weaver, 6 NY2d 307, 309), where the legislative design is expressed in an act employing unambiguous terms such as here, the court must enforce it according to the letter, the responsibility for the result being upon the Legislature, not upon the courts (Matter of De Peyster, 210 NY 216, 225; Kinner v Board of Educ., 6 AD2d 204, 207, affd 9 NY2d 845; Triborough Bridge & Tunnel Auth. v Crystal & Son, 2 AD2d 37, 39, 40).
Since the underlying controversy is of a character likely to recur in the future, review should not be declined on the ground of mootness, despite the fact that the election to which the certificate of nomination relates has long since been conducted.
*560 The order of the Appellate Division should be reversed and the petition dismissed, without costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion.
Order reversed, etc.