42 N.Y.2d 347 (1977)
Fred G. Moritt, Appellant,
v.
Governor of the State of New York et al., Respondents.
Court of Appeals of the State of New York.
Argued June 1, 1977.
Decided July 7, 1977.
Melvin C. Garner for appellant.
Louis J. Lefkowitz, Attorney-General (Robert S. Hammer and Samuel A. Hirshowitz of counsel), for respondents.
Chief Judge BREITEL and Judges JASEN, GABRIELLI, JONES, WACHTLER and COOKE concur in memorandum; Judge FUCHSBERG, dissents in part and votes to modify in a separate opinion.
*349 MEMORANDUM.
The order of the Appellate Division is affirmed, without costs. We conclude that New York State may constitutionally require a showing of State-wide support in addition to a showing of numerical support so long as no *350 substantial burden is imposed on access to the primary ballot (Williams v Rhodes, 393 US 23, 34). The United States Supreme Court has recognized that there is an important State interest "in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot" (Jenness v Fortson, 403 US 431, 442). The States may therefore fix reasonable standards to assure that a candidate has some level of popular support. Subdivision 5 of section 136 of the Election Law does not impose an unconstitutionally onerous burden on a Democratic Party candidate, such as petitioner, seeking to place his name on a primary ballot. There are 39 Congressional districts in New York State and the statute requires only that a candidate have 100 signatures from each of one half of those Congressional districts. Thus, 2,000 of the required 20,000 signatures must be distributed geographically among 20 Congressional districts and the remaining 18,000 may come from one district or any combination of districts. We do not think that this requirement is the type of restriction on access to the ballot which is invidiously discriminatory and violative of the equal protection clause (see Williams v Rhodes, supra).
On the other hand, the geographical distribution requirement serves to preclude a concentration of party members in one area of the State that may, solely for petition purposes, exercise exclusive control over the nominating process. The challenged statute is thus a permissible method of preventing manipulation of the ballot by superficial petition signing. The statute guarantees that those seeking State-wide office have some minimal measure of broad based numerical and geographical support and imposes no excessively prohibitive burden on a candidate seeking a position on a primary ballot. In light of the rationally based legitimate State purpose served by subdivision 5 of section 136, it is inappropriate to conclude, as does the dissenter, that the distribution requirement is "irrelevant". It can be acknowledged that, because the number of enrolled party members does and probably always will vary widely from one Congressional district to another, the strict application of the one man-one vote principle announced by the Supreme Court would strike down the criteria of subdivision 5 of section 136. The arithmetic application appears to be present. The Supreme Court, however, has said that the one man-one vote equation is not mechanically or *351 automatically to be applied at all levels of government or to every aspect of the electoral process. As indicated above, strong and sound reasons of electoral polity support the exaction of a broad geographical representation. Because this is so, and because of the near practical impossibility of implementing a precise one man-one vote rule in party nominating procedures, we do not think the Supreme Court would strike down the considered enactment of our State Legislature in subdivision 5 of section 136. In our analysis full respect for the articulation of the Supreme Court rule to date does not require us to do so.
Thus, we find that the present version of the statute does not suffer from the infirmity of the former version of subdivision 5 of section 136 invalidated in Socialist Workers Party v Rockefeller (314 F Supp 984, affd 400 US 806) since, unlike counties, the State's Congressional districts all have nearly equal populations. While, as noted, there are differences in the numbers of registered Democrats among the various districts, because of shifting registration patterns the present version of the statute is probably the most feasible means of implementing a legitimate State policy and at the same time accommodating the mandate of the one man-one vote principle as articulated by the Supreme Court (compare Moore v Ogilvie, 394 US 814; Socialist Workers Party v Rockefeller, supra). For example, absolute precision in adherence to an infallible one man-one vote principle would make it necessary to allocate a separate district system for each political party and within the political party for each election year.
Our consideration of appellant's challenge to the constitutionality of subdivision 2 of section 131 of the Election Law under the Federal Constitution is, of course, precluded by reason of the res judicata effect we must accord the unanimous determination of the three-Judge Federal court that the claim did not present a "substantial constitutional question" (Moritt v Rockefeller, 346 F Supp 34, affd 409 US 1020). On the merits, however, we find no merit to his claim and hold that subdivision 2 of section 131 of the Election Law does not violate the one man-one vote principle, or the provisions of the New York State Constitution relied upon by petitioner.
FUCHSBERG, J. (dissenting).
Petitioner, Fred G. Moritt, claims his two unsucessful candidates for nomination for State-wide office were stymied by unconstitutional provisions *352 of New York's Election Law. His attack centers on section 131 (subd 2) and section 136 (subd 5).
The first of these sections, subdivision 2 of section 131, allows each member of a political party's State committee "to cast a number of votes which shall be in accordance with the ratio which the number of votes cast for the party candidate for governor on the line * * * of the party at the last preceding general state election * * * bears to the total vote cast on such line * * * in the entire state"; a candidate for nomination who receives 25% or more of the vote of the State committee is automatically placed on the primary ballot. The second, subdivision 5 of section 136, requires a candidate who does not receive such a percentage to obtain petitions signed "by not less than twenty thousand or five per centum, whichever is less, of the then enrolled voters of the party in the state, of whom not less than one hundred or five per centum, whichever is less, of such enrolled voters shall reside in each of one-half of the congressional districts of the state".
In 1972, petitioner declared his candidacy for the Democratic Party nomination for Associate Judge of the Court of Appeals. He was unable to obtain 25% of the vote of the State Democratic Committee. Thereupon, he commenced an action in Federal court seeking to declare the statutes unconstitutional. The majority of the three-Judge court dismissed the action, solely on the grounds of abstention (Moritt v Rockefeller, 346 F Supp 34) and the United States Supreme Court summarily affirmed, without opinion (409 US 1020).
During the spring of 1974, petitioner again sought the Democratic Party nomination, this time for Attorney-General. Again unsuccessful in obtaining 25% of the vote of the State Democratic Committee, he commenced this action in Supreme Court, Kings County, where he obtained a judgment declaring subdivision 2 of section 131 and subdivision 5 of section 136 unconstitutional. The Appellate Division unanimously reversed and the appeal is now here as of right.
Before consideration of the merits, I note that neither res judicata (based on the United States Supreme Court's summary affirmance) nor mootness preclude a determination on the merits. As to res judicata, the Federal court did not enter a judgment of constitutionality, but abstained; it therefore did not necessarily pass upon the issues sought to be litigated here (see Newin Corp. v Hartford Acc. & Ind. Co., 37 N.Y.2d 211, 216). Nor is the Supreme Court's determination, which *353 "is an affirmance of the judgment only", entitled to any greater respect (Mandel v Bradley, 432 US 173). As to mootness, since a challenge to these provisions of the Election Law is likely to reoccur and yet, as a result of time limitations, evade review, the case should not be considered moot (Matter of Carr v New York State Bd. of Elections, 40 N.Y.2d 556, 559; cf. Matter of Oliver v Postel, 30 N.Y.2d 171, 177.)
On the merits, I find petitioner's attack on subdivision 5 of section 136 of the Election Law to be persuasive and would modify the order of the Appellate Division to declare that portion of the statute which requires signatures to be obtained from "not less than one hundred or five per centum, whichever is less, of such enrolled voters * * * resid[ing] in each of one-half of the congressional districts of the state" to be unconstitutional.
A State may, of course, limit the number of candidates to be placed on the ballot (e.g., Jenness v Fortson, 403 US 431, 442). But the reason for denying access must rest upon some rational distinction. Obviously, the requirement for 20,000 signatures furthers a legitimate State interest that candidates demonstrate sufficient support to lessen the possibility of a plethora of quixotic candidacies which could cause "confusion, deception and even frustration of the democratic process at the general election" (Jenness v Fortson, supra, p 442). And the gross numerical requirement in this case comports with those in other statutes which have resisted attack on that score (see American Party of Tex. v White, 415 US 767, 782-783 [1% of the vote for Governor in the last general election which amounted to 22,000 signatures]; cf. Storer v Brown, 415 US 724, 738, [5% of total vote cast in last general election]).
The geographical requirement is another thing. It does not further a legitimate State interest. It is now axiomatic that "one man-one vote" equal protection standards mandate that "[o]nce the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote * * * wherever their home may be in that geographical unit" (Gray v Sanders, 372 US 368, 379). This principle, first applied to the apportionment of a State Legislature, has since been extended to activities of political parties engaged in the process of nominating candidates for public office by either the primary or convention method (see, e.g., Seergy v Kings County Republican County Committee, 459 F.2d 308; *354 Bode v National Democratic Party, 452 F.2d 1302; cf. Moore v Ogilvie, 394 US 814).
Thus, State-wide elective office must be filled by a vote of the entire State population. Its distribution by locality is irrelevant. Otherwise, as under subdivision 5 of section 136 of our Election Law, a minority of enrolled party members could wield a veto power over the choice made by a majority (see Moritt v Rockefeller, 346 F Supp 34, 41 [TENNEY, J., dissenting in part], affd 409 US 1020, supra). For, if the geographical distribution of signers of designating petitions under subdivision 5 of section 136 are not in accordance with the figures or percentage arbitrarily fixed by that statute, a candidate will not be placed on the primary ballot even if he obtains the signatures of a majority of the enrolled members of the party in the State as a whole. Such a consequence, to borrow the majority's terminology, can hardly be termed "mechanical". It is a substantive matter of the first rank.
Another glaring example of the way in which subdivision 5 of section 136 operates to place an unequal burden on State-wide candidates arises out of the geographical concentration of the Congressional districts in New York State. As the majority indicates, Congressional district lines are drawn, as required by constitutional mandate, so as to make the districts nearly equal in population. Because of the heavily concentrated New York City metropolitan area population, 24 of the State's 39 Congressional districts are located in one small corner of the State. Candidates from that area may, therefore, travel between any two points to reach voters within the required 20 districts by public transportation within an hour; candidates from the western, northern and central parts of the State are hundreds of miles and hours and hours away from the same availability of electors. (See map annexed.)
However, no such infringement is found in the "weightedvoting" provisions of subdivision 2 of section 131 of the Election Law. That statute simply provides for a voice in the nominating process equal to the party's voting strength in the particular area and "does not inhibit entry into the political arena, deny the right to vote, or debase the weight of some votes" (New York State Democratic Party v Lomenzo, 460 F.2d 250, 251). Indeed there is nothing unconstitutional per se in weighted voting (see Franklin v Krause, 32 N.Y.2d 234 [semble], remittitur amd 33 N.Y.2d 646, app dsmd 415 US 904), *355 which serves to render the party nominating system manageable despite constantly shifting party enrollments.
Accordingly, the order of the Appellate Division should be modified to the extent of declaring the geographical distribution requirement set forth in subdivision 5 of section 136 of the Election Law unconstitutional and otherwise affirmed.
Order affirmed.
*356