Fuchsberg, J. (dissenting).
Petitioner, Fred G. Moritt, claims his two unsucessful candidacies for nomination for State-wide office were stymied by unconstitutional provisions *352 of New York’s Election Law. His attack centers on section 131 (subd 2) and section 136 (subd 5).
The first of these sections, subdivision 2 of section 131, allows each member of a political party’s State committee "to cast a number of votes which shall be in accordance with the ratio which the number of votes cast for the party candidate for governor on the line * * * of the party at the last preceding general state election * * * bears to the total vote cast on such line * * * in the entire state”; a candidate for nomination who receives 25% or more of the vote of the State committee is automatically placed on the primary ballot. The second, subdivision 5 of section 136, requires a candidate who does not receive such a percentage to obtain petitions signed "by not less than twenty thousand or five per centum, whichever is less, of the then enrolled voters of the party in the state, of whom not less than one hundred or five per centum, whichever is less, of such enrolled voters shall reside in each of one-half of the congressional districts of the state”.
In 1972, petitioner declared his candidacy for the Democratic Party nomination for Associate Judge of the Court of Appeals. He was unable to obtain 25% of the vote of the State Democratic Committee. Thereupon, he commenced an action in Federal court seeking to declare the statutes unconstitutional. The majority of the three-Judge court dismissed the action, solely on the grounds of abstention (Moritt v Rockefeller, 346 F Supp 34) and the United States Supreme Court summarily affirmed, without opinion (409 US 1020).
During the spring of 1974, petitioner again sought the Democratic Party nomination, this time for Attorney-General. Again unsuccessful in obtaining 25% of the vote of the State Democratic Committee, he commenced this action in Supreme Court, Kings County, where he obtained a judgment declaring subdivision 2 of section 131 and subdivision 5 of section 136 unconstitutional. The Appellate Division unanimously reversed and the appeal is now here as of right.
Before consideration of the merits, I note that neither res judicata (based on the United States Supreme Court’s summary affirmance) nor mootness preclude a determination on the merits. As to res judicata, the Federal court did not enter a judgment of constitutionality, but abstained; it therefore did not necessarily pass upon the issues sought to be litigated here (see Newin Corp. v Hartford Acc. & Ind. Co., 37 NY2d 211, 216). Nor is the Supreme Court’s determination, which *353 "is an affirmance of the judgment only”, entitled to any greater respect (Mandel v Bradley, 432 US 173). As to mootness, since a challenge to these provisions of the Election Law is likely to reoccur and yet, as a result of time limitations, evade review, the case should not be considered moot (Matter of Carr v New York State Bd. of Elections, 40 NY2d 556, 559; cf. Matter of Oliver v Postel, 30 NY2d 171, 177.)
On the merits, I find petitioner’s attack on subdivision 5 of section 136 of the Election Law to be persuasive and would modify the order of the Appellate Division to. declare that portion of the statute which requires signatures to be obtained from "not less than one hundred or five per centum, whichever is less, of such enrolled voters * * * residing] in each of one-half of the congressional districts of the state” to be unconstitutional.
A State may, of course, limit the number of candidates to be placed on the ballot (e.g., Jenness v Fortson, 403 US 431, 442). But the reason for denying access must rest upon some rational distinction. Obviously, the requirement for 20,000 signatures furthers a legitimate State interest that candidates demonstrate sufficient support to lessen the possibility of a plethora of quixotic candidacies which could cause "confusion, deception and even frustration of the democratic process at the general election” (Jenness v Fortson, supra, p 442). And the gross numerical requirement in this case comports with those in other statutes which have resisted attack on that score (see American Party of Tex. v White, 415 US 767, 782-783 [1% of the vote for Governor in the last general election which amounted to 22,000 signatures]; cf. Storer v Brown, 415 US 724, 738, [5% of total vote cast in last general election]).
The geographical requirement is another thing. It does not further a legitimate State interest. It is now axiomatic that "one man-one vote” equal protection standards mandate that "[o]nce the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote * * * wherever their home may be in that geographical unit” (Gray v Sanders, 372 US 368, 379). This principle, first applied to the apportionment of a State Legislature, has since been extended to activities of political parties engaged in the process of nominating candidates for public office by either the primary or convention method (see, e.g., Seergy v Kings County Republican County Committee, *354 459 F2d 308; Bode v National Democratic Party, 452 F2d 1302; cf. Moore v Ogilvie, 394 US 814).
Thus, State-wide elective office must be filled by a vote of the entire State population. Its distribution by locality is irrelevant. Otherwise, as under subdivision 5 of section 136 of our Election Law, a minority of enrolled party members could wield a veto power over the choice made by a majority (see Moritt v Rockefeller, 346 F Supp 34, 41 [Tenney, J., dissenting in part], affd 409 US 1020, supra). For, if the geographical distribution of signers of designating petitions under subdivision 5 of section 136 are not in accordance with the figures or percentage arbitrarily fixed by that statute, a candidate will not be placed on the primary ballot even if he obtains the signatures of a majority of the enrolled members of the party in the State as a whole. Such a consequence, to borrow the majority’s terminology, can hardly be termed "mechanical”. It is a substantive matter of the first rank.
Another glaring example of the way in which subdivision 5 of section 136 operates to place an unequal burden on Statewide candidates arises out of the geographical concentration of the Congressional districts in New York State. As the majority indicates, Congressional district lines are drawn, as required by constitutional mandate, so as to make the districts nearly equal in population. Because of the heavily concentrated New York City metropolitan area population, 24 of the State’s 39 Congressional districts are located in one small corner of the State. Candidates from that area may, therefore, travel between any two points to reach voters within the required 20 districts by public transportation within an hour; candidates from the western, northern and central parts of the State are hundreds of miles and hours and hours away from the same availability of electors. (See map annexed.)
However, no such infringement is found in the "weighted-voting” provisions of subdivision 2 of section 131 of the Election Law. That statute simply provides for a voice in the nominating process equal to the party’s voting strength in the particular area and "does not inhibit entry into the political arena, deny the right to vote, or debase the weight of some votes” (New York State Democratic Party v Lomenzo, 460 F2d 250, 251). Indeed there is nothing unconstitutional per se in weighted voting (see Franklin v Krause, 32 NY2d 234 [semble], remittitur amd 33 NY2d 646, app dsmd 415 US 904), *355 which serves to render the party nominating system manageable despite constantly shifting party enrollments.
Accordingly, the order of the Appellate Division should be modified to the extent of declaring the geographical distribution requirement set forth in subdivision 5 of section 136 of the Election Law unconstitutional and otherwise affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur in memorandum; Judge Fuchs-berg, dissents in part and votes to modify in a separate opinion.
Order affirmed.

*356