OPINION OF THE COURT
Harold Tompkins, J.
Motions “A” and “B” on the election calendar are consolidated for purposes of disposition.
Petitioners in Gammerman v Board of Elections of City of N. Y. and in Leff v Board of Elections of City of N. Y. move for an order pursuant to section 16-116 of the Election Law directing the respondent board of elections to accept the certificates nominating petitioners as the Democratic Party nominees for Supreme Court Justice in the general election to be held November 2, 1982 and that petitioners’ names be placed on the ballot as the party’s *1056 candidates for Justice of the Supreme Court. Respondent board of elections cross-moves to dismiss the petition.
On October 1, 1982 representatives of the Democratic Party of New York County filed certificates of nomination for the office of Justice of the Supreme Court. Justices Bowman, Fraiman, Greenfield, Leff and Sandifer were nominated for re-election.[1] Civil Court Judges Shea, Wright, Goodman and Gammerman were nominated for election as Justice of the Supreme Court as was Criminal Court Judge Ciparick.
On October 7, 1982 the respondent board of elections ruled, after objections were filed by the objector respondents, that the certificates of nomination of the petitioners would not be accepted as they were filed one day after the deadline for filing said certificates as set forth in section 13-100 of the Election Law as amended by section 1 of chapter 449 of the Laws of 1982, effective June 30, 1982.[2]
The board of elections and the Republican and Liberal Party candidate respondents urge that the relief sought is barred by the Court of Appeals rulings in Matter of Carr v New York State Bd. of Elections (40 NY2d 556) and more recently, Matter of Hutson v Bass (54 NY2d 772).
In Matter of Carr v Board of Elections (supra), the Court of Appeals held that pursuant to a clear statutory mandate, failure to file any petition or certificate relating to the designation or nomination of a candidate for party position was a fatal defect (Election Law, § 1-106, subd 2, formerly § 143, subd 12, as amd by L 1969, ch 529).[3]
It is the opinion of this court that Matter of Carr v Board of Elections (supra) does not control the outcome of this proceeding.
*1057 The 1981 and 1982 elections in New York City have been in constant doubt by reason of several lawsuits in the Federal courts.[4] New York City’s primary election of 1981 was postponed and reapportionment plans were under constant scrutiny. As a result, the political calendar as set forth in section 13-100 of the Election Law (as added by L 1982, ch 449, § 1) contained substantial modifications. Furthermore, petition signature requirements were relaxed. (Election Law, § 13-100 as added by L 1982, ch 449, §2.)
The salient portions of section 13-100 with respect to the political calendar for judicial candidates are as follows:
“22. A judicial district convention for nominating candidates for public office shall be held not earlier than September twenty-fifth and not later than September twenty-ninth.
“23. A certificate of party nomination made at a judicial district convention for an office to be filled at the general election shall be filed not later than September thirtieth.”
The affidavit of one of the law chairmen of the New York County Democratic Party who had the responsibility for filing the certificates of nomination points to certain facts. Because of the shortening of the time period within which the party could hold its judicial convention to six days or approximately one half the time previously allotted under prior political calendars it became necessary to schedule the convention for September 29, 1982. This was the last day allowed under subdivision 22 of section 13-100. He demonstrated that the convention could not be held before this date since canvassing of the votes for the judicial delegate-candidates cast in the primary election on September 23, 1982 was late and certification was in doubt partly as a result of a weekend and the Jewish high holy day of Yom Kippur falling in the middle of the judicial convention period. The facts support a finding that the compressed political calendar of 1982 caused considerable confusion.[5]
*1058 Petitioners argue that the filing requirements for judicial candidates are arbitrary, and, as applied, deprive the electorate of the right to vote for a candidate of the party in which they are enrolled relying on Williams v Rhodes (393 US 23).[6]
This court finds that the Legislature in enacting the 1982 amendment to section 13-100 of the Election Law did not contemplate the impact of the changes on the judicial nominating and election process as demonstrated by the facts of this case.
Matter of Carr v Board of Elections (supra), while it clearly directs courts not to overlook the clear legislative mandate concerning filing dates, does not, in the opinion of this court, bar a court, when faced with the peculiar facts of this case, from exercising its discretion to relieve a party from its error or omission. Indeed, petitioners have set forth authority that the Court of Appeals has recognized that discretionary power still rests with the courts to permit late filing where particular facts are present. (See Matter of Bristol v Chiavaroli, 40 NY2d 898, affg 54 AD2d 72.)[7]
This court cannot deprive the enrolled voters of the Democratic Party of the right to vote for the candidates of their party. Here, the strict mandate of Matter of Carr v Board of Elections (supra), and subdivision 2 of section 1-106 of the Election Law, as applied to these facts militates against the very purpose of the Election Law, namely, to insure that people have the right freely and fairly to choose those who will govern them. (Matter of Hunting v Power, 20 NY2d 680; Lauer v Board of Elections of City of N. Y., 262 NY 416.)
*1059 The substantial prejudice to the voters of the Democratic Party is obvious. The nomination of candidates for judicial office is the culmination of a six-month period of extensive interviewing and screening.
Section 1 of article I of the Constitution of the State of New York provides that “[n]o member of this state shall be disenfranchised”. Where a statute amounts to an unnecessary or unreasonable restraint on the freedom to nominate candidates it is in conflict with the Constitution (Matter of Hopper v Britt, 204 NY 524).
The Legislature, in keeping with constitutional mandates eased the filing requirements caused by the unusual election developments in the year 1982, in furtherance of the policy of providing all candidates with an opportunity to be placed on the ballot. This indicates a recognition by the Legislature of the hardship created by the changes in this year’s electoral process. However, in the case of judicial nominees the Legislature, perhaps inadvertently made this year’s political calendar unduly burdensome resulting in three parties failing to meet the statutory deadline.
Under these circumstances subdivision 2 of section 1-106 of the Election Law does not preclude this court from exercising its discretion to allow for the late filing of petitioners’ certificates of nomination.
The petitions are granted.[8] All other motions made by counsel and not addressed by the court are denied.
Settle order.[9].

. Justice Fraiman declined to join in the proceeding but does not oppose the relief requested.

. Justices Leff, Bowman, Sandifer, Fraiman and Greenfield will appear on the Republican and Liberal lines as candidates' for Justice of the Supreme Court. Judges Shea, Wright and Ciparick will only appear on the Liberal line. Judges Gammerman and Goodman will not appear on the ballot.

. Matter of Carr v Board of Elections {supra) involved a proceeding sought to place three candidates on the Liberal Party line in the Tenth Judicial District in the 1975 election. These three candidates were also on the ballot as candidates of the Democratic, Republican and Conservative Party lines. The Court of Appeals decided this case one year after the election had been held.

. Flatteau v Anderson, 82 Civ 0876, (SDNY).

. The parties indicated that the Conservative Party for New York County similarly filed their certificates of nomination for judicial candidates on October 1, 1982. The Right to Life Party in the Second Judicial Department also filed its certificates late, on October 4, 1982.

. Petitioner’s Exhibit No. 6, conceded by all parties as the breakdown voter enrollment in New York County by party, demonstrates the well-known fact that Democratic Party enrollment far exceeds that of any other party to the extent of comprising over 60% of the registered voters in the county.

. Petitioners have also argued that the legislative history surrounding the amendment (L 1969, ch 529, § 1) to subdivision 12 of former section 143 of the Election Law (now § 1-106, subd 2) was not completely before the Court of Appeals in Matter of Carr v New York State Bd. of Elections (40 NY2d 556). They argue that the bill that passed was considered by the Legislature to have left some power with courts to exercise discretion on these matters.

. Justice Leff in his moving papers and on oral argument requests that the relief sought by him also include his placement on the Conservative Party line as that party’s candidate for Supreme Court Justice. Since all the necessary parties were not before the court this motion must be denied.

. Arguments on these motions as well as on a companion election matter, Samuel v Board of Elections “C” on the election calendar concluded at 5:00 p.m. on October 12, 1982. The parties indicated that appellate review would be sought. According to the filing requirements of the Appellate Division a decision of this court was mandated by 1:00 p.m. on October 13, 1982, in order for the appeal to be argued in that court on October 14, 1982. Accordingly, this decision was rendered without the benefit of, and prior to the receipt of answering papers and memoranda of certain respondents.