OPINION OF THE COURT
Thomas P. Phelan, J.
Petitioner Bonnie Green (Green) seeks to remove respondent *830 Thomas P. DiNapoli (DiNapoli) as the Independence Party candidate for Nassau County Executive alleging multiple grounds under the Election Law.
Issue
Whether the failure of respondent Board of Elections (Board) to endorse the day, hour and minute on BiNapoli’s certificate of acceptance of designation constitutes a fatal defect of filing is the threshold issue.
Election Law § 1-106 (2) provides that “The failure to file any * * * certificate relating to the designation * * * of a candidate for * * * public office or to the acceptance * * * of such designation * * * within the time prescribed by the provisions of this chapter shall be a fatal defect.”
Election Law § 6-144 provides that such certificates shall be filed in the office of the Board of Elections of the subject county and further provides that “[a] 11 such * * * certificates shall at the time of filing thereof be endorsed by such officer or board with the day, hour and minute of such filing.”
Without dispute, DiNapoli’s time to file the required certificate of acceptance expired at 5:00 p.m. on July 16, 2001 and no certificate endorsed by the Board with the day, hour and minute exists.
Contentions
Green contends that regardless of whether DiNapoli’s certificate of acceptance was delivered to and in the possession of the Board in a timely fashion, the absence of the endorsement delineated by Election Law § 6-144 constitutes a fatal defect of filing as provided by Election Law § 1-106 (2).
Alternatively, Green contends that if the absence of a day, hour and minute endorsement is not a fatal defect as a matter of law, the credible evidence taken during the hearing before this Court on July 31 and August 2, 2001 does not support a finding of timely filing (Election Law § 6-144).
DiNapoli contends that endorsement with the day, hour and minute is not an indispensable component of filing under the Election Law and the credible evidence establishes that the certificate was timely filed during regular business hours of the Board at approximately 10:00 a.m. on July 16, 2001.
Findings of Fact
At the hearing held on July 31 and August 2, 2001, exhibits were marked in evidence and the testimony of three witnesses *831 taken. All three witnesses were questioned both as to the events surrounding the claimed filing of the certificate of acceptance with the Board on July 16, 2001 as well as each witness’s past and present dealings and association with candidate DiNapoli.
Gerard Twombly, assistant to Chief Clerk Procopio, testified on July 31, 2001; and, on August 1, 2001, Gerard Terry, Esq., counsel to the Democratic Election Commissioner, close advisor and counsel to the DiNapoli campaign, testified, as did James Procopio, Chief Clerk of the Board.
All three witnesses are employees of the Board, registered Democrats, and political supporters of DiNapoli’s campaign for Nassau County Executive. The fact that they are governmental employees as well as active political foot soldiers is not contradictory in a democratic and republican form of government. Mr. DiNapoli was formerly the chair of the Democratic County Committee.
The testimony of Twombly, Terry and Procopio was, with one exception,[1] consistent, detailed, credible and weighed in the light of their personal and political commitment to candidate DiNapoli.
Their collective testimony establishes that on July 16, 2001 Terry arrived at the Board shortly after 9:30 a.m. with four different certificates of acceptance, one of which being the certificate of acceptance at issue. Terry first checked to determine if he, in his capacity as democratic counsel, was late for a scheduled 9:30 a.m. Commissioner’s meeting. He learned that the meeting was delayed. Passing through the central employee work area en route to Commissioner Barbara Patton’s office, he attempted to hand the four certificates he carried to the Chief Clerk. Procopio directed him to Gerard Twombly. Procopio advised Terry that Twombly was responsible for acceptance of filings. When Twombly was not found in his office, Terry again entered the central work area where he located Twombly who accepted all four certificates at approximately 10:00 a.m.
Twombly failed, however, at that time to endorse the certificates with the date, hour and minute. He testified the time *832 clock was being utilized by other Board personnel. Instead, Twombly brought the four certificates, including the one here at issue, to his desk intending to time clock them later that day.
Although testimony suggests that these four certificates may have subsequently been included in a pile of properly endorsed certificates taken from Twombly’s desk and secured in Commissioner Patton’s office by Procopio prior to 5:00 p.m. on July 16, 2001 (thereby helping to explain the Board’s failure to discover its error until 9:30 a.m. on July 17, 2001), the events subsequent to acceptance by Twombly are essentially irrelevant given the conceded failure to endorse the day, hour and minute on the certificate of acceptance at issue.
Law
The language of Election Law § 1-104 (2)[2] which characterizes the failure to timely file as a “fatal defect” was added in 1969 (L 1969, ch 529, § 1, eff May 10, 1969). The purpose of its “fatal defect” provision was to “insure the prompt filing of petitions and certificates * * * establish an orderly progression of events culminating in the election of candidates to public office * * * [and] overcome the trend of recent court decisions which have had the effect of impairing the mandatory nature of the time-table” (Matter of Carr v New York State Bd. of Elections, 40 NY2d 556, 558, quoting Mem of Dept of State in Support of L 1969, ch 529, 1969 NY Legis Ann, at 249-250).
The statutory language that failure to timely file petitions and certificates with the Board of Elections should be strictly construed and is so mandatory that documents filed just 15 or 16 minutes late will not be deemed timely filed (see, Matter of Hutson v Bass, 54 NY2d 772, 774 [15 minutes late]; Matter of Fintz v Poveromo, 197 AD2d 944 [16 minutes late]).
Representative government and political candidacy is not on the threshold of extinction. Solace may be found in knowing that the vast majority of candidates are able to comply with the rather precise requirements of New York’s Election Law. Only those whose “careless or inadvertent failure to follow the mandate of statute” place their candidacy in jeopardy (Matter of Hutson v Bass, supra; Matter of Rhodes v Salerno, 90 AD2d 587).
Characterizing the circumstances present here as constituting a failure to timely file, petitioner embraces the restrictive *833 rhetoric found within these cases and contends that the Board’s obligation to endorse the certificate with the date, hour and time of filing fathers the conclusion that lack of endorsement is a lack of filing; and thus spawns a fatal defect.
In support, Green cites Matter of Pasquerella v Sunderland (207 AD2d 515 [2d Dept]). The factual circumstances and holding in Pasquerella (at 515) are quite brief and need recitation in full:
“The alleged delivery of an unmarked envelope containing Acceptance of Designation and Certificates of Authorization to the desk of the Deputy Commissioner of the Westchester County Board of Elections within the statutory time limit did not comply with the statutory requirements that they be ‘filed in the office of the Board of Elections’, and at the time of filing ‘be endorsed * * * with the day, hour and minute of such filing’ (Election Law § 6-144). The envelope was discovered on the Deputy Commissioner’s desk approximately eight days after the time limit ran. This failure to file within the time prescribed is a fatal defect (see, Election Law § 1-106 [2]).”
Petitioner contends that Pasquerella dovetails with the circumstances of this case in that both involve the Board’s failure to endorse.
Analysis of Pasquerella reveals, however, that it is truly an untimely filing case because there were no indices of knowing receipt by the Board until eight days after the filing deadline. The delivery vehicle for the documents in Pasquerella was an unmarked envelope allegedly delivered to the desk of the Deputy Commissioner. Thus, there was no claim of actual delivery to a person within the Board of Elections, authorized to receive them, prior to the filing deadline. Nor was there any evidence of timely receipt by any Board of Elections personnel as the documents bore no day, hour, and minute endorsement after remaining undiscovered on the desk until “approximately eight days after the time limit ran.”
Under such circumstances, no one advanced any issues warranting an evidentiary hearing as to timely receipt. Had the documents in Pasquerella borne some notation as to time of receipt, an evidentiary hearing would have been warranted and arguably petitioners could have succeeded in having their respective candidacies validated.
The reference by the Appellate Division, Second Department, to the absence of the endorsement when listing the indicia of a *834 failure to timely file does not equate every lack of endorsement with lack of timely filing. The statute does not make endorsement the responsibility of the candidate who is only obligated to file in a timely fashion.
Just as events surrounding how the Board came to be in the possession of the documents were relevant in Pasquerella, so too are they relevant in the within case.
Well before expiration of the statutory deadline for filing, DiNapoli’s certificate of acceptance was actually in the hands of and accepted for filing by Twombly, an appropriate Board employee.
Although case law on the appellate landscape is sparse, the Appellate Division, Third Department, has held that filing is achieved by delivery to an appropriate Board of Elections employee (Matter of Rutherford v Jones, 128 AD2d 978, lv denied 69 NY2d 606; see, Matter of Cozzolino v Columbia County Bd. of Elections, 218 AD2d 921, lv denied 86 NY2d 704).
When contrasted with the factual setting in Pasquerella, there is de minimis risk of fraud in this case and dismissal of Green’s challenge of untimeliness does no violence to the language or intent of Election Law § 1-104 (2).
To hold under these facts that Election Law § 6-144 invalidates DiNapoli’s certificate of acceptance as untimely filed is to promote disorder in the progression of events leading to election of public officials. Even those who diligently comply with the Election Law run the risk of having their candidacy vitiated by inadvertence, carelessness, misfeasance, malfeasance or partisan politics by Board of Elections personnel.
Since this Court’s ruling does not leave the Independence Party without a candidate for Nassau County Executive, respondents’ cross motion for an “opportunity to ballot” pursuant to the holding in Matter of Hunting v Power (20 NY2d 680) is denied without prejudice to renewal.
Having rejected petitioner’s challenge to DiNapoli premised upon an allegedly flawed filing of his certificate of acceptance, all parties are directed to appear in the courtroom of the undersigned on August 10, 2001 at 9:30 a.m. to address any unadjudicated challenges.

. On one occasion, Twombly, in adopting the date contained within a question posed by petitioner’s counsel’s cross-examination, erroneously placed the events surrounding delivery of the certificate by Terry to Twombly at the Board of Elections on July 15, 2001, concededly a Sunday, when the Board was not open. Since all other testimony establishes that the delivery took place on Monday, July 16, 2001, when the Board of Elections was filled with busy employees, this inconsistency is de minimis and easily explained as an oversight by both counsel and witness.

. Formerly found at Election Law § 143 (12) (L 1976, ch 233, § 1, eff Dec. 1, 1977).