OPINION OF THE COURT
Smith, J.
Respondents, the Commissioners of the Board of Standards and Appeals of the City of New York (BSA), argue that this Court should defer to the agency’s interpretation of section 12-10 of New York City’s Zoning Resolution. However, when an interpretation is contrary to the plain meaning of the statutory language, we have typically declined to enforce an agency’s conflicting application thereof. We see no compelling reason to depart from that long-established rule in this case.
In calculating the Floor Area Ratio (FAR) for zoning purposes, floor area includes the total amount of "floor space used for dwelling purposes, no matter where located within a building, when not specifically excluded; * * * However, the floor area of a building shall not include * * * cellar space.” *101 Contrary to respondents’ argument, we find that this language clearly provides that "cellar space” is excluded from "floor area” without further qualification^ We further conclude that such an interpretation is not "absurd.” The Appellate Division’s order should be reversed.
BACKGROUND
A development of two-family residences on Staten Island was planned in a R3-2 zoning district. That zoning district permits a "floor area ratio” of 0.50 for each building. That ratio means that the total floor area of each building may not exceed 50% of the area of the lot on which the residence is situated. One particular residence was designed to be a trilevel residential building with one dwelling unit comprised of the top two floors and another single dwelling unit on the ground floor. The architect calculated the FAR without including the floor space of the ground floor.
The relevant zoning provision, Zoning Resolution § 12-10, provides in relevant part:
" 'Floor area’ is the sum of the gross areas of the several floors of a building or buildings, measured from the exterior faces of exterior walls or from the center lines of walls separating two buildings. In particular, floor area includes: * * *
"(g) any other floor space used for dwelling purposes, no matter where located within a building, when not specifically excluded; * * *
"However, the floor area of a building shall not include:
"(a) cellar space”.
The Zoning Resolution defines "cellar” in R3 zoning districts as: "a space wholly or partly below the base plane with more than one-half its height (measured from floor to ceiling) below the base plane.” It is conceded by both parties that the ground floor of the subject residence fits within this definition of a "cellar.”
On October 14, 1993, the New York City’s Department of Buildings (DOB) objected to the architect’s FAR calculations because the ground level was a "dwelling unit” and should have been included in the FAR calculations notwithstanding the fact that the ground floor was a "cellar” as that term is defined in the Zoning Resolution. The DOB found that the cel *102 lar space exclusion only applied to "true cellar space, space used for nonhabitable purposes, such as for furnace rooms, utility rooms, auxiliary recreation rooms, etc.” The DOB further claimed that this interpretation was consistent with the "Zoning Resolution’s treatment of basement space and the Multiple Dwelling Law’s treatment of cellar space.”
The DOB also claimed that the "past practice and policy in interpreting the 1916 Zoning Resolution and the current Zoning Resolution has consistently been to require a habitable room at the zoning cellar level to be included as floor area.” Previous approvals that did not conform to this interpretation were allegedly "given in error.”
The DOB revoked petitioners’ building permit and denied the architect’s request for reconsideration. The development corporation of the residential community appealed to the BSA. The BSA noted that the Department of City Planning, "the drafters of the Zoning Resolution, strongly supports the determination of the Department of Buildings based upon the language of the Zoning Resolution, the legislative history of the definition of 'floor area’ and the interpretation of the Zoning Resolution in conjunction with the Multiple Dwelling Law.” The BSA denied the appeal and found that DOB’s ruling had been "reasonable and rational.”
Petitioners filed this CPLR article 78 proceeding to annul the BSA’s decision. Supreme Court examined the legislative history of the provision and determined that cellar space to be used as dwelling space should be included in the FAR calculation. The court also found that DOB had consistently adhered to that interpretation which reflected standard industry practice. The Appellate Division affirmed and found BSA’s interpretation rational and supported by legislative history. This Court granted leave to appeal.
ANALYSIS
Contrary to the parties’ assertions, this Court has consistently applied the same standard of review for agency determinations. Where "the question is one of pure legal interpretation of statutory terms, deference to the BSA is not required” (Matter of Toys ”R” Us v Silva, 89 NY2d 411, 419). On the other hand, when applying its special expertise in a particular field to interpret statutory language, an agency’s rational construction is entitled to deference (see, Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 239; Kurc *103 sics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). Even in those situations, however, a determination by the agency that "runs counter to the clear wording of a statutory provision” is given little weight (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d, at 459; see also, Matter of Toys ”R” Us v Silva, 89 NY2d, at 418-419).
The statutory language could not be clearer. As noted above, a cellar is defined within the Zoning Resolution in terms of its physical location in a building. "Floor area” includes dwelling spaces when not specifically excluded and "cellar space,” without further qualification, is expressly excluded from FAR calculations.[1] Thus, FAR calculations should not include cellars regardless of the intended use of the space. BSA’s interpretation conflicts with the plain statutory language and may not be sustained.
BSA urges this Court to ignore the obvious interpretation of the Zoning Resolution and, instead, to look beyond the pages of statutory text. BSA attempts to justify its reading by first referring this Court to the language of a former version of the regulation. In 1916, the Zoning Resolution defined "floor area” as "the sum of the gross horizontal areas of the several floors * * * but excluding * * * basement and cellar floor areas not devoted to residence use.” BSA is correct that the 1916 Zoning Resolution supports its contention that cellar space is only excluded from FAR calculations when not used for residential purposes.
However, the provision was changed in 1961 to its present text. In the amended text, cellar spaces were excluded from floor area without qualification. There is no evidence that the changed meaning was accidental or superfluous (see, Mabie v Fuller, 255 NY 194, 201 ["We must assume that the Legislature in enacting the section intended that it should effect some change in the existing law and accomplish some useful purpose”]). Still, BSA insists that the amendment did not change the law.
For example, BSA argues that it has always interpreted the resolution a particular way so, presumably, it should be allowed to continue to do so. Such evidence might be more com *104 pelling if the present text of the Zoning Resolution offered any support. It should also be noted that BSA concedes that it has not consistently interpreted the statute in the same manner as it did here.
Perhaps most telling is BSA’s contention to Supreme Court that its interpretation of the Zoning Resolution is consistent with the Multiple Dwelling Law which applies to residential buildings for three or more families. As BSA notes in its answer, which was verified by its Commissioner:
"Section 26 of Title I in Article 3 of the Multiple Dwelling Law reads (under paragraph 2 Definitions):
"b. 'Floor area’: the sum of the gross horizontal areas of all of the several floors of a dwelling or dwellings and accessory structures on a lot measured from the exterior faces of exterior walls or from the center line of party walls, except:
"1. cellar not used for residential purposes.”
Unfortunately, BSA relies upon a version of the law which was amended over a decade ago. In 1985, the definition of the exclusion was modified from "cellar not used for residential purposes” to the unqualified "cellar space” (see, L 1985, ch 857, § 1). According to the legislative memorandum which accompanied the text of the new law, the "amendment resolves [a] conflict by correlating the bulk of yard regulation requirements of the Multiple Dwelling Law with those of the Local Zoning Resolution, thus providing one clear set of guidelines for professionals and administrators” (1985 McKinney’s Session Laws of NY, at 3171). The memorandum concludes that "the Mayor urges upon the Legislature the earliest possible favorable consideration of this proposal” (id.). Thus, it was thought in 1985 that the unqualified exclusion of cellar space from floor area calculations would be in conformity with the Zoning Resolution. BSA’s reliance on outdated laws to justify its reading of the Zoning Resolution would be yet another reason to annul its determination.
Essentially, BSA has (sometimes) grafted onto the language of the current Zoning Resolution an addendum of its own whereby only certain cellars are excluded from floor area calculations. Typically, we have declined to uphold such an interpretation (see, Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [" '(N)ew language cannot be *105 imported into a statute to give it a meaning not otherwise found therein’ ”], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 94, at 190). Moreover, the conclusion reached herein is not "absurd” as the BSA contends.
FAR is related to the density of land use and such regulations have been upheld as reasonable (see, Pondfield Rd. Co. v Village of Bronxville, 1 AD2d 897, affd without opn 1 NY2d 841; 1 Anderson, New York Zoning Law and Practice § 9.46 [3d ed]). BSA contends that its interpretation of the Zoning Resolution would prevent "the additional burden” of increased neighborhood population upon schools and parking. However, FAR calculations were not designed to control population.
As noted above, FAR is comprised of total floor area within the building divided by the total area of the lot containing the building. Since residential areas have lower FAR, more lot is required to build larger buildings. Such concerns restrict physical development within a neighborhood (see, 7 Rohan, Zoning and Land Use Controls § 42.06 [2] [c] [1997] ["Through this device, zoning ordinances restrict the amount of development on a lot by specifying the ratio that the floor area of a building may bear to the lot area”]; see also 3 Rathkopf, Zoning and Planning § 34C.02 [1] [4th ed] [the " 'floor area ratio’ or F.A.R. technique is widely used today to establish the gross maximum size of a building in terms of the amount of floor area permitted therein”]).
It has also been stated that "[o]ne way to control the size of a building is to limit its overall volume” through FAR limits (7 Rohan, Zoning and Land Use Controls, at App 42-10; see also, 3 Rathkopf, Zoning and Planning § 34C.02 [1] [4th ed] ["A more flexible method of regulating bulk is establishing a ratio between the size of the lot and the gross floor area of the principal building to be erected thereon”]). Indeed, the area regulations of New York City were originally enacted to regulate bulk in building development (see, Bassett, Zoning: The Laws, Administration, and Court Decisions During the First Twenty Years, at 62 ["Many ordinances have followed that of New York City in limiting building area to a fraction of the lot area. * * * The regulation must not be so drastic that it compels an absurdly small house on a normal lot or an unreasonably large lot for a normal house”]).
It seems clear that such zoning restrictions were never designed to combat the erection of primarily underground housing levels which do not contribute to bulky, high-rise *106 development.[2] It is eminently logical that cellars, housing levels that are more than halfway below the ground, would be excluded from FAR calculations notwithstanding the actual or intended use of the space. Consistent with the purpose of FAR restrictions to control building density, it should be noted that basement space, also defined in the Zoning Resolution in terms of its physical location within a building as being more than halfway above ground, is included in FAR calculations to the same extent as similarly situated space. Contrary to the views expressed in the dissenting opinion, we find nothing in zoning treatises, California case citations or the legislative history of the 1990 amendment to the Zoning Resolution that would indicate a contrary legislative intent regarding the 1961 amendments to the Zoning Resolution which excluded cellars, in unqualified language as to the intended use, from FAR calculations.
In sum, BSA urges this Court to disregard the plain meaning of the Zoning Resolution because (1) the former version of the Zoning Resolution should be binding upon any interpretation of the amended language thereof; (2) BSA’s interpretation is consistent with an outdated version of the Multiple Dwelling Law; (3) the Zoning Resolution was amended to require cellars to be measured from the surrounding ground level rather than curb level to prevent overexcavation of lots; (4) BSA has inconsistently interpreted the Zoning Resolution in a particular manner; and (5) BSA seeks to prevent overcrowding through provisions designed to control physical bulk of buildings. We find such arguments to be unpersuasive.
This Court has long applied the well-respected plain meaning doctrine in fulfillment of its judicial role in deciding statutory construction appeals. We agree that "[i]t is fundamental that a court, in interpreting a statute, should attempt to ef *107 fectuate the intent of the Legislature,” but we have correspondingly and consistently emphasized that "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208 [emphasis added] [citations omitted]; see, Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674-675).
We have provided further clear teaching and guidance that "[a]bsent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute,” because "no rule of construction gives the court discretion to declare the intent of the law when the words are unequivocal” (Bender v Jamaica Hosp., 40 NY2d 560, 562 [emphasis added] [citations omitted]). Lastly, "[t]he courts are not free to legislate and if any unsought consequences result, the Legislature is best suited to evaluate and resolve them” {id. [emphasis added]). Based on this Court’s adherence to these respectable principles and precedents as primary sources of authority for the legitimacy of the plain-meaning doctrine, we reject the dissent’s characterization of the statutory construction tool generally and as applied in this case.
BSA’s interpretation is not only against the plain meaning of the resolution’s text and contrary to the Multiple Dwelling Law, but also contrary to the purpose behind FAR restrictions in general. There is no statutory or practical support for BSA’s strained construction of the Zoning Resolution for FAR calculations. The solution here is for the City to legislate a different definition if that is its intent, to be manifested by the ordinance itself.
The Appellate Division order should be reversed, with costs, the petition granted and the determination of respondent Board of Standards and Appeals revoking petitioners’ building permit annulled.

. The dissent interprets the exclusionary language to apply to dwelling space "which is specifically excluded as such” (dissenting opn, at 110 [emphasis in original]). The provision, of course, is not so limited. Where, as here, the language is unambiguous, and the result not absurd, we see no reason to depart from the legislative text.

. In a 1990 Planning Report prepared by the Department of City Planning, it is stated that under current regulations, a "cellar does not count as floor area” and "cellars are exempt from floor area calculations” (see, New York Dept of City Planning, Lower Density Zoning, Proposed Follow-up Text Amendment: A Planning Report, at 35, 37 [June 1990]). Previously, the resolution defined a cellar as more than halfway below "curb” level which caused developers to "level” lots so that a ground floor could still qualify as a "cellar.” The Zoning Resolution was amended to provide that "the base plane [ground], and not curb level, be the benchmark for determining whether floor space is a basement or cellar.” Thus, a basement, "with more than half its height” above the ground would count as floor area but cellars on sloping sites, even if situated above "curb level” would be excluded in such calculations.