*272 OPINION OF THE COURT
Charles J. Tejada, J.
On or about September 26, 1996, Lincoln West Partners, L.P., the Board of Managers of the Grand Millennium Condominium and Michael Bebón (hereinafter petitioners) submitted an application to the Department of Housing Preservation and Development of the City of New York (hereinafter respondent or HPD) for partial tax exemption, pursuant to section 421-a of the Real Property Tax Law (RPTL) which states in pertinent part that: “To be eligible for exemption under this section such construction shall take place on land which, thirty-six months prior to the commencement of such construction, was vacant, predominantly vacant, under-utilized, or improved with a nonconforming use” (RPTL 421-a [2] [d]).
On June 2, 1997, the respondent denied petitioners’ application and set forth its reasons for doing so in a letter of that date.
Petitioners subsequently contacted the Corporation Counsel of the City of New York and requested a review of the respondent’s June 2, 1997 determination.
In a letter dated September 4, 1997, the respondent issued a final determination, again denying the petitioners’ application.
This September 4, 1997 determination simply stated that, “HPD has withdrawn the earlier determination, dated June 2, 1997, regarding the eligibility of the referenced project”; that, “rather than limit the review to these two theories, however, we have undertaken a comprehensive review of all theories under which the project might have qualified for § 421-a benefits”; and, that, “we have concluded that the project is ineligible for § 421-a benefits.”
In a decision dated December 17, 1998, this court found that HPD failed to set forth the reasons for its denial of benefits. Consequently, the court remitted the matter to HPD and ordered it to set forth the reasons for denying the petitioners’ application.
On or about January 9, 1998, respondent set forth the reasons for denying the application. Although, as stated in its letter, respondent “reviewed Lincoln West’s application on each of the four grounds for site eligibility provided in the statute (i.e., vacant, predominantly vacant, under-utilized, or improved with a non-conforming use)”, the only reasons relevant for this court’s review are those related to “Non-Conforming Use”, which stated that: “HPD reviewed whether the Grand Millen *273 nium site was land improved with a non-conforming use thirty-six months prior to the commencement of construction. The Grand Millennium site was located in the Lincoln Square Special District and was zoned C4-7, which permitted general retail and commercial uses. The Five-story Tower Records building was used for commercial and retail purposes, consistent with the zoning for the site. It also contained four parking spaces and a loading berth, uses which were not routinely allowable in the Lincoln Square Special District. However, these four parking spaces and one loading berth occupied less than .0087 of the total floor area of the site and represented less than 1% of the total land and building assessed value. Evaluating the Tower Records site as a whole, as the statute requires, this use is simply too insignificant to satisfy the 421-a requirement of ‘land improved with a non-conforming use.’ Lincoln West’s representatives urged HPD to find that any nonconforming use, no matter how de minimis, would render the entire site eligible for 421-a tax benefits. The Legislature, however, did not provide that ‘land * * * improved with any non-conforming use’ would be eligible for 421-a benefits, and no fair reading of the statute could import such an intent. HPD therefore determined that the Grand Millennium site was not land improved with a non-conforming use thirty-six months prior to the commencement of construction of the Grand Millennium.”
DISCUSSION
The scope of this court’s review is limited. Recently, in Matter of DeFoe v New York City Dept. of Transp. (87 NY2d 754, 760 [1996]), the Court of Appeals reiterated, that in reviewing an agency’s decision, the only determination to be made is: “ ‘whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion’ (CPLR 7803 [3]; Matter of Pell v Board of Educ., 34 NY2d 222, supra).”
Respondent analyzed the petitioners’ application under all four categories of eligibility set forth in RPTL 421-a (2) (d). However, the parties agree that the petitioners only need to show that they are eligible for the benefits under one of the categories, and the petitioners claim eligibility under the “nonconforming use” provision.
Also, there is no disagreement that four parking spaces and a loading berth, at the site, were “non-conforming uses” (respondent agrees that, the site “contained four parking spaces *274 and a loading berth, uses which were not routinely allowable in the Lincoln Square Special District”); or that the four parking spaces and a loading berth covered a relatively small area of the site (“less than .0087 of the total floor area of the site and represented less than 1% of the total land and building assessed value”, according to the respondent; 7.3% according to petitioners).
The crux of the issue before this court is whether respondent’s interpretation and application of RPTL 421-a (2) (d)’s terms, “land * * * improved with a non-conforming use”, constitutes an error of law.
Respondent interprets the terms “land * * * improved with a non-conforming use” to require more than a “non-conforming use” which is “too insignificant” or “de minimis”, in relation to the “site as a whole”. Additionally, it argues that “a nonconforming use” does not mean “any non-conforming use” (“the Legislature, however, did not provide that land * * * improved with any non-conforming use’ would be eligible for 421-a benefits, and no fair reading of the statute could import such an intent”).
Respondent cites no statutory language or legislative history to support its interpretation of what constitutes “land * * * improved with a non-conforming use,” nor do respondent’s RPTL 421-a regulations, set forth in 28 RCNY 6-02 (í) (1), offer assistance as to the meaning of “land * * * improved with a non-conforming use”. The regulation merely tracks the language of the statute that an eligible site “must have been vacant, predominantly vacant, under-utilized, or improved with a non-conforming use” (28 RCNY 6-02 [f] [1]). Lastly, neither RPTL 421-a (2) (d) nor HPD’s regulations, 28 RCNY 6-02 (f) (1), mentions a significance or substantiality test nor modify the term “non-conforming use” with any minimum significance requirement based on the amount of space covered by the nonconforming use or the building’s assessed value.
By interpreting the statute to deny eligibility on the basis that the nonconforming use is “too insignificant” or “de minimis” in relation to the whole site, respondent has modified the term “a non-conforming use” to read “a significant nonconforming use”.
Respondent cites Matter of Trump-Equitable Fifth Ave. Co. v Gliedman (57 NY2d 588 [1982]) to support its position that to qualify as a site improved with a non-conforming use, the nonconforming use must be other than “too insignificant” or “de minimis” and cannot be “any” non-conforming use. In that *275 case, respondent argues, the Court of Appeals “expressly rejected the ‘anything is enough’ interpretation (and) instead, it endorsed the view that something more than a minimum amount of under-utilization of the site had to be shown”, and that “the Court explained that the site eligibility requirements must be applied to the site as a whole, rather than simply isolating a small instance of under-utilization” (respondent’s mem of law, at 9). The same principle, respondent contends, is applicable to “non-conforming use”. In essence, respondent argues that term “significant” must be read into the statute.
Although the construction afforded a particular statute by the agency responsible for its administration is entitled to the greatest weight (Matter of Tommy & Tina v Department of Consumer Affairs, 95 AD2d 724 [1st Dept 1983], affd 62 NY2d 671 [1984]), and should be upheld if not irrational or unreasonable (Matter of Johnson v Joy, 48 NY2d 689 [1979]), such is not always the case “[w]hen ‘the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent’ ” (Matter of Yong-Myun Rho v Ambach, 74 NY2d 318, 321 [1989]).
Moreover, in situations where an agency’s determination “runs counter to the clear wording of a statutory provision”, its determination is given little weight. (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].)
The Court of Appeals has long adhered to the view that “ ‘[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature,’ ” but the Court has consistently emphasized that “ ‘where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ ” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 106-107 [1997], citing Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669 [1988].)
The highest Court of our State has long applied and consistently used the plain meaning doctrine in fulfilling its judicial role in deciding statutory construction that it reviews. (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 106 [1997], supra.)
Moreover, “[a]bsent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute * * * [because] no rule of construction gives the court discretion to declare the intent of the law when the words are unequivocal” (Bender v Jamaica Hosp., 40 NY2d 560, 562 [1976] [emphasis added] [citations omitted]; Matter of Raritan *276 Dev. Corp. v Silva, supra, at 107); and “ ‘[t]he courts are not free to legislate and if any unsought consequences result, the Legislature is best suited to evaluate and resolve them’ (91 NY2d, at 107.)
In the instant case, the question, what is meant by “land * * * improved with a non-conforming use”, is one of pure legal interpretation of statutory terms, thus deference need not be accorded to respondent (Matter of Toys “R” Us v Silva, 89 NY2d 411, 419 [1996]), and there is little basis to rely on any special competence or expertise because “statutory construe-, tion is the function of the courts”. (Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108 [1945].)
Here, the interpretation of RPTL 421-a (2) (d), as applicable to this case, does not require any reliance on respondent’s expertise.
The language of the statute is clear and requires a plain meaning construction. Respondent’s modification of the terms “land * * * improved with a non-conforming use” to what amounts to “land * * * improved with a significant nonconforming use”, is not supported by legislative history or a plain reading of the statute. Had the Legislature intended to limit the availability of the partial tax exemption solely to property improved with a non-conforming use, which was other than “too insignificant” or “de minimis”, it could have done so through appropriately worded legislation. Respondent’s requirement of undefined significance improperly creates vagueness in direct contravention to the plain words of the statute.
Respondent’s “significant non-conforming use” requirement is not even supported by its regulations. RPTL 421-a (3) (iv) allows HPD to “promulgate rules and regulations to carry out the provisions of this section, not inconsistent with the provisions hereof’. However, in exercising its rule-making power, an administrative agency cannot extend the meaning of the statutory language to cover situations not intended to be embraced within the statute (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, supra; Matter of Jones v Berman, 37 NY2d 42 [1975].)
Also, respondent’s reliance on Trump (supra) is misplaced. In that case, respondent denied RPTL 421-a benefits on the ground that the land had to be “substantially” under-utilized, as modified in respondent’s regulations, rather than “land which * * * was * * * under-utilized”, as stated in the statute. (RPTL 421-a [2] [d].) The Court of Appeals rejected respondent’s *277 attempt to include such a modifier when the Legislature did not do so. The Court held that the regulation was “clearly inconsistent with the plain words of the governing statute” (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, supra, at 593).
Here, respondent has even less to rely on since its RPTL 421-a regulations do not even contain a definition of “nonconforming use”. It is apparent that respondent is clearly adding a requirement, that the non-conforming use be substantial, not found in the statute. Thus, its determination cannot be upheld.
Assuming that respondent could have required that the nonconforming use be more than de minimis, it would have had to promulgate “rules and regulations” to that effect. Such regulations would have had to be adopted pursuant to City Administrative Procedure Act (NY City Charter) § 1043 (CAPA). In the instant case, respondent did not follow the procedure set forth in CAPA. Consequently, any argument that a “significance” requirement is authorized must fail.
Further, respondent does not contend that the legislative intent would be defeated if the statute were given a construction consistent with the plain meaning of the words used.
It is well settled in our State that in interpreting a statute, the intent of the Legislature is the controlling or most important factor. (Matter of Carr v New York State Bd. of Elections, 40 NY2d 556 [1976].) Moreover, the intent of the Legislature is to be sought and ascertained from language used and “where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Patrolmen’s Benevolent Assn. v City of New York, supra, at 208; Matter of Bolden v Blum, 68 AD2d 600 [3d Dept 1979]).
The language of the statute reflects an intent to require simply that in order to qualify for the partial tax benefits, land must be improved with “a non-conforming use”.
Lastly, respondent’s argument that the word “a” in the phrase “improved with a non-conforming use” cannot be read to mean “any” non-conforming use is contrary to its plain meaning. Black’s Law Dictionary (1 [5th ed 1979]) states in part that “ ‘A’ means ‘one’ or ‘any,’ but less emphatically than either. It may mean one where only one is intended, or it may mean any one of a great number. It is placed before nouns of the singular number, denoting an individual object or quality *278 individualized.” The plain meaning of the word “a”, as used in RPTL 421-a, denotes a quality individualized and therefore “any” non-conforming use.
CONCLUSION
Respondent’s interpretation, by imposing a requirement that there must be significant non-conforming use in order to qualify for RPTL 421-a benefits, is inconsistent with the plain meaning of the governing statute and constitutes an error of law.
The Grand Millennium site was improved with a nonconforming use and petitioners are entitled to the partial tax exemption.
It is ordered that the petition is granted.
It is further ordered that respondent’s determination denying petitioners’ application for RPTL 421-a benefits is vacated and respondent is directed to grant petitioners the partial tax exemption.