OPINION OF THE COURT
Anthony J. Paris, J.
By verified petition dated June 10, 2009 and supporting affidavit of David J. Butler and supporting affidavit of David M. Primo, Esq., filed on June 11, 2009, petitioner commenced this CPLR article 78 proceeding as both a writ of prohibition and a writ of mandamus seeking to annul respondents’ decision of February 12, 2009, which decision denied petitioner’s request for recertification of its ambulance service pursuant to Public Health Law § 3009. Petitioner further seeks to compel respondents to recertify petitioner and issue an ambulance operating certificate or, in the alternative, to compel respondents to review petitioner’s application without a requirement that petitioner have been in continuous service as an emergency ambulance service from 1977 to present.
Petitioner had brought a previous proceeding by order to show cause and petition filed on October 14, 2008, seeking to compel respondents to determine petitioner’s status under the provisions of Public Health Law § 3009. That petition was granted by decision dated December 17, 2008, and respondents were directed to consider and determine petitioner’s application for recognition and certification of an ambulance service pursuant to Public Health Law § 3009. By letter dated January 9, 2009, petitioner requested that respondents act upon petitioner’s application to renew its ambulance certificate relative to its grandfather rights under Public Health Law § 3009. On February 12, 2009, respondents served a letter decision which stated that they had considered the application by petitioner to amend its current ambulance service operating certificate to include Onondaga County pursuant to Public Health Law § 3009 and were denying that application. The denial contained in respondents’ decision of February 12, 2009 was based on their determination that continuous service was required under Public Health Law § 3009, and the finding that there was no evidence that petitioner had continuously provided emergency ambulance service since 1975. It is this denial that petitioner seeks to annul in the instant proceeding.
Respondents were duly served with moving papers and the matter was returnable before this court on September 16, 2009. *355 Prior to that return date, respondents filed a verified answer dated August 21, 2009, together with an affidavit of Edward G. Wronski, Director of the New York State Department of Health Bureau of Emergency Medical Services, sworn to August 3, 2009, in opposition to the petition. Petitioner thereafter filed a reply affidavit of David J. Butler, sworn to on September 9, 2009, in reply to respondents’ opposition. Oral arguments were held on September 16, 2009.
Most of the background facts and history of this matter are contained in this court’s decision of December 17, 2008. As the court noted at that time, petitioner established that it was in existence as an ambulance service in Onondaga County prior to April 1, 1975 and that it had filed an application for recertification prior to September 1, 1975 as required by Public Health Law § 3009. Based upon that, respondents were directed to consider and determine petitioner’s application for recognition and certification of an ambulance service pursuant to Public Health Law § 3009.
Public Health Law § 3009, entitled “Continuation of Existing Services,” provides that the Department of Health shall issue a certificate or statement of registration to any ambulance service or its predecessor in interest which was in bona fide operation as an ambulance service on April 1, 1975, within the territory for which the application is made, and has so operated since that time, without requiring proof that there is a public need for such application or any further proceedings. The section further provides that such application was to be submitted to the department prior to September 1, 1975.
The Public Health Law as revised in 1975 now specifically requires a public need for service within a particular area as a prerequisite to obtaining a permit. Pursuant to Public Health Law § 3009, ambulance services holding permits prior to April 1, 1975 are exempt from this requirement.
In reaching their February 12, 2009 determination denying petitioner’s application for recertification, respondents did not hold a hearing or seek any evidence in support of petitioner’s application. Instead, the application was denied by letter of respondents dated February 12, 2009. Respondents made findings of fact in their denial letter, including that petitioner’s predecessors, TLC Wheelchair Service, Inc., and TLC Ambulance and Wheelchair Service, Inc., had been issued permits for general ambulance service in October and November of 1974, and that on August 29, 1975 petitioner had submitted proof of a *356 permit and bona fide operation of an ambulance service for Onondaga County.
Respondents further found that petitioner had not filed a biennial ambulance certification application since 1977, and therefore had not been certified to provide emergency or non-emergency medical response services in Onondaga County since 1979.
Based upon those findings of fact, respondents denied' petitioner’s request because there was no evidence that petitioner operated ambulances in Onondaga County after 1977. Therefore, respondents determined that petitioner had not continuously provided service in Onondaga County since 1975.
It is respondents’ position that in order to obtain recertification pursuant to Public Health Law § 3009 (as opposed to Public Health Law § 3005, which includes a determination of public need), an applicant must show not only that it was in service in the territory as of April 1, 1975 and submitted an application prior to September 1, 1975, but also that the ambulance service “has so operated since that time.” (§ 3009 [1].) Respondents interpret Public Health Law § 3009 as requiring the ambulance service to be in continuous operation from April 1, 1975 to the present.
Petitioner disagrees with this interpretation of the language of Public Health Law § 3009. It is petitioner’s position that the continuity of operation language is limited to continuous operation between April 1, 1975 and September 1, 1975, the date by which the application had to be submitted — in other words, in bona fide operation on April 1, 1975 within the territory and has so operated since that time up to September 1, 1975. Petitioner has submitted an ambulance operating permit issued by respondents to petitioner’s predecessor which is dated November 26, 1975 and extends its ambulance operation until 1977.
If petitioner’s interpretation of the phrase “continuous operation” is correct, the permit dated November 26, 1975 establishes that petitioner’s ambulance service was in continuous operation from April 1, 1975 to September 1, 1975, and upon that showing petitioner is grandfathered under Public Health Law § 3009 and is entitled to a statutory exemption from establishing public need.
It is clear from the statutory language that the legislature when enacting this statute intended that ambulance services *357 which were in existence prior to April 1, 1975 would not need to establish a public need in order to obtain a certificate. However, new ambulance services would be required to obtain a certificate of public need pursuant to Public Health Law §§ 3004 and 3005 before being certified to act as an ambulance service. It was apparently not contemplated at the time this statute was written that an application under this section would be made in 2009, inasmuch as the statute required applications to be submitted by September 1, 1975. Thus, the purpose of the words “and has so operated since that time” clearly meant the period of time between April 1, 1975 and September 1, 1975, and not a time period commencing on April 1, 1975 and extending indefinitely into the future.
When the statute is plain on its face and free from ambiguity, the courts should not normally look to other means of interpretation to determine its meaning. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; Matter of Excellus Health Plan v Serio, 2 NY3d 166 [2004].)
The language of Public Health Law § 3005 (2) further supports this interpretation inasmuch as it requires compliance with section 3009 (1) as it relates only to the issuance of initial certification.
That this was previously respondents’ understanding of the meaning of the term “continuous operation since that time” is shown by their letter to petitioner dated October 31, 2006, wherein they stated that “in order to consider the continuation of existing services in accordance with Article 30, section 3009, an ambulance service must provide documentary proof of bonafide continuous service prior to April 1, 1975 within the geography in question. This time period is specifically defined by the Public Health Law.” (Emphasis added.)* There is no mention in respondents’ letter about showing continuous service after April 1, 1975, which would be expected if, in fact, it was respondents’ understanding that applicants for recertification such as petitioner would be expected to provide evidence of such “continuous operation” subsequent to April 1, 1975.
The fact that respondents failed to mention this requirement in their October 31, 2006 letter supports petitioner’s claim that *358 respondents did not previously read and interpret this statute as requiring proof of continuous operation after April 1, 1975 prior to the time of their review of petitioner’s current application.
“Although an agency’s rational construction of a statute is normally entitled to deference, 'a determination by the agency that runs counter to the clear wording of a statutory provision is given little weight.’ ” (Excellus Health at 171, quoting Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 103 [1997].)
The purpose of Public Health Law § 3009 was to vest a right to operate an ambulance service for those who were in operation on April 1, 1975 without a showing of public need as long as the registration was filed by September 1, 1975. The situation in the instant case involves a company which was in existence prior to April 1, 1975 and registered by September 1, 1975 and recertified on November 26, 1975, but which was concededly not in continuous operation in Onondaga County from November 26, 1975 to January of 2009 when its application for recertification was again submitted.
Based on this court’s finding that the plain language of the statute does not require a showing that an ambulance service has operated continuously in the territory for the period following September 1, 1975, respondents’ denial of February 12, 2009 was based on an erroneous interpretation of a statute and therefore must be annulled. (Matter of Excellus Health Plan v Serio, supra.)
Due to a variety of events which resulted in this petitioner seeking recertification pursuant to Public Health Law § 3009 in 2009 relative to a certification previously issued in 1975 pursuant to Public Health Law § 3009, but which certification was not maintained by payment of biennial renewal certification fees as required by Public Health Law § 3005 (4), this situation appears to be unique.
Petitioner concedes that it was initially unable to operate an emergency ambulance service in Onondaga County during the years 1977 through 1979 due to implementation by Onondaga County of guidelines for emergency medical transportation requiring 24-hour operation, two-way radio communication licensed by the FCC and Sanitary Code requirements which necessitated petitioner to reoutfit and reequip to become compliant with the guidelines. Petitioner claims it received verbal assurance from named representatives of respondents who indicated that petitioner’s permit status would not be affected *359 by any voluntary withdrawal from emergency calls inasmuch as petitioner’s grandfathered rights under article 30 would be reserved for resumption at a later date. Petitioner continued to conduct nonemergency transport between 1977 and 1979 under the authority granted by respondents.
In 1979, once petitioner believed it was in compliance and capable of operation of an ambulance service under the Onondaga County Sanitary Code, it requested an application for recertification. Respondents refused recertification on the basis that there was no evidence that petitioner was certified during the relevant time period and, as such, there was no showing petitioner was entitled to the grandfather rights under Public Health Law § 3009. Petitioner thereafter twice applied for a certificate of need under Public Health Law § 3005, first in 1979 and again in 1989, and ultimately received denials on each occasion.
Sometime in 2006 or thereafter, following requests to search the Department’s files and FOIL requests, documents were located in respondents’ files which established that petitioner was in existence as of April 1, 1975 and had applied for certification prior to September 1, 1975. It was also established that petitioner received its initial certificate for ambulance service pursuant to Public Health Law § 3009 (1) and § 3005 (2) on November 26, 1975.
An ambulance operating certificate is issued for two years and there is a biennial fee to be paid for recertification (Public Health Law § 3005 [4]). Petitioner failed to apply for recertification or pay a biennial fee in 1977. According to petitioner, this was due to its inability to continue providing emergency ambulance service in Onondaga County under the new stringent guidelines, and was based on the verbal assurances to petitioner by respondents that a failure to apply for recertification and pay the biennial fee would not result in suspension of its grandfather rights under Public Health Law § 3009.
Respondents state that they did not consider petitioner’s application herein as an application for recertification because petitioner did not currently have an ambulance service operating certificate that includes Onondaga County, due to petitioner’s failure to pay a biennial fee. However, payment of biennial fees is not a prerequisite for application of Public Health Law § 3009. The prerequisites for application of Public Health Law § 3009 are that the ambulance service was in existence prior to April 1, 1975 and applied for certification prior to September 1, 1975, both of which petitioner has done.
*360 While respondents rely on petitioner’s failure to pay the biennial fee and contend that therefore petitioner did not have an ambulance service operating certificate for Onondaga County, it is notable that petitioner’s certification issued in 1975 was never revoked, suspended, limited or annulled, despite respondents’ ability to do so under Public Health Law § 3012 (1) (c) for failure to pay the biennial fee, or after paragraph (f) of subdivision (1) was added in 1992, on the basis that petitioner had discontinued operations for a period in excess of one month. In addition, pursuant to subdivision (3) of Public Health Law § 3012, no certificate , shall be revoked, suspended, limited or annulled without a hearing (or without a showing of imminent danger to the public). There having been no hearing held relative to petitioner’s certification, there was no revocation, suspension, limitation or annulment of the certification, and respondents cannot rely on the lack of a certification as a basis for denying Public Health Law § 3009 status.
It is also inexplicable that respondents failed to raise their current argument about lack of “continuous operation” at the time of the 2008 article 78 proceeding. If successful, the “continuous operation” argument would have rendered this court’s earlier decision moot. Respondents limited their challenge at that time to a claim that they were without authority to consider petitioner’s recertification under Public Health Law § 3009 pursuant to a decision issued by the Honorable Brian F. DeJoseph in Matter of Michael J. Stassi et al. v New York State Department of Health (index No. 07-3411). Had respondents raised and successfully argued their present interpretation (that it was also necessary for petitioner to establish continuity of ambulance service in Onondaga County from 1975 to present), respondents would likely not have been directed to consider petitioner’s application under Public Health Law § 3009.
However, the court finds no legal bar to respondents raising the issue of “continuous operation” in this litigation. It is not a matter of collateral estoppel or issue preclusion because the issue of “continuous operation” was not previously litigated. (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999].) However, as aforementioned, respondents’ current position is inaccurate, and respondents’ inexplicable failure to raise the issue in the prior litigation simply lends weight to the fact that respondents did not previously give the continuity language of the statute the meaning that they now ask the court to accept.
Based on the foregoing, petitioner’s article 78 challenge that respondents’ decision was based on an improper interpretation *361 of the “continuous operation” language of Public Health Law § 3009 and not supported by law is granted and the February 12, 2009 determination of respondents is annulled.
Assuming, arguendo, that respondents’ determination was not based on an error of law, this court would further find that respondents’ actions were arbitrary and capricious in denying petitioner’s application without any hearing based on, inter alia, respondents’ conduct in denying petitioner’s recertification in 1977 due to a lack of documentation which was later discovered in respondents’ files, as well as respondents’ arbitrary and capricious interpretation of “continuous operation” as a basis to deny petitioner’s recertification. Respondents should further have held a hearing on the issue of petitioner’s claims that it had received verbal assurances from named representatives of respondents that a failure to pay the biennial fee would not result in a loss of its grandfather rights under Public Health Law § 3009.
Respondents state no other basis for denial of recertification other than a failure to pay biennial fees and a failure to operate continuously in Onondaga County since 1975, neither of which is a sufficient basis to deny recertification under Public Health Law § 3009.
Petitioner’s application was not, as stated by respondents in their initial decision and argued in their opposition papers, a request to “amend its current ambulance service operating certificate to include Onondaga County.” Petitioner is seeking recertification of its ambulance service operating certificate for Onondaga County without a finding of public need pursuant to. Public Health Law § 3009. It was not a request for an amendment nor is petitioner seeking to include Onondaga County. Onondaga County was already included.
Respondents were in error in not considering this an application for recertification based on their claim that petitioner does not currently have an ambulance service operating certificate that includes Onondaga County. (See Wronski affidavit 11 27.) In the first instance, a current operating certificate is not a requisite for application under Public Health Law § 3009, and, in any event, as discussed previously in this decision, respondents never took steps to revoke, suspend, limit or annul petitioner’s certificate pursuant to Public Health Law § 3012 (3). Therefore, while petitioner concededly did not pay a biennial fee from 1977 to date, that failure is not a basis to find that its certification was ever annulled.
*362 Furthermore, respondents concede in their papers that had they treated petitioner’s application as one seeking recertification, their analysis of the merits of such an application would have been identical to the analysis set forth in their February 12, 2009 denial. That analysis, as discussed previously in this decision, was flawed and based on an error of law.
While respondents were only directed to consider petitioner’s application under this court’s decision of December 17, 2008, and not required to grant the application, respondents must show that the denial was not arbitrary or capricious or based upon an error of law. Respondents have failed to do so here, and their denial of February 12, 2009 is hereby set aside and annulled.
This court further determines that there is no necessity for any further consideration of whether petitioner is entitled to recertification pursuant to Public Health Law § 3009. It has been previously determined by this court that petitioner has met the prerequisites for consideration, and the court has now determined that respondents’ only stated basis for denying recertification under Public Health Law § 3009 was based on an erroneous interpretation of the statute and was otherwise arbitrary and capricious. As respondents have provided no rational basis for their determination denying petitioner recertification under Public Health Law § 3009, the court directs respondents to issue that recertification to petitioner pursuant to CPLR 7806 without a finding of public need. (Matter of Barton Trucking Corp. v O’Connell, 7 NY2d 299, 308 [1959]; Matter of Rochester Colony v Hostetter, 19 AD2d 250 [4th Dept 1963].)
This court’s determination is limited to a finding that respondents’ denial of petitioner’s application for recertification as an ambulance service without the finding of public need pursuant to Public Health Law § 3009 (1) is annulled and respondents are directed to grant recertification to petitioner without a finding of public need. Petitioner does, however, remain subject to all the rules and regulations governing article 30 insofar as compliance with equipment, training, medical expertise, and vehicle equipment, maintenance, and safety compliance is concerned.
Therefore, by reason of the foregoing, petitioner’s article 78 petition is granted to the extent that respondents’ decision of February 12, 2009, which denied petitioner’s application for recertification under Public Health Law § 3009, is *363 annulled, and respondents are further directed to forthwith issue petitioner a recertification pursuant to Public Health Law § 3009.

 Respondents used the same language in their letter to petitioner dated August 6, 2007, attached as exhibit C to the Wronski affidavit, yet respondents argue that they meant “provision of continuous service since prior to April 1, 1975 within the territory in question” (see affidavit 1110), an argument which this court rejects because the word since was not used in respondents’ correspondence.