[896 NYS2d 596]

In the Matter of LILLIAN ROBERTS, as Executive Director of District Council 37 American Federation of State, County and Municipal Employees, AFL-CIO, et al., Petitioners, v MICHAEL R. BLOOMBERG, as Mayor of the City of New York, et al., Respondents.

Supreme Court, New York County, December 24, 2009

**APPEARANCES OF COUNSEL**

*Mary J. O'Connell, General Counsel, District Council 37 AF-SCME AFL-CIO*, New York City (*Steven Sykes* and *Erica C.*

*Gray-Nelson* of counsel), for petitioners. *Michael A. Cardozo, Corporation Counsel,* New York City (*Alan M. Schlesinger* of counsel), for Michael R. Bloomberg and another, respondents. *Wilson Elser Moskowitz Edelman & Dicker, LLP,* New York City, for Directions for Our Youth, respondent. *Sonya Kaloyanides, General Counsel, New York City Housing Authority,* New York City (*Steven J. Rappaport* of counsel), for Ricardo Elias Morales, respondent.

## OPINION OF THE COURT

WALTER B. TOLUB, J.

Petitioners, unions representing employees of the New York City Housing Authority (NYCHA), bring this CPLR article 78 special proceeding to challenge respondents' decision to terminate 232 NYCHA employees and permit the letting of contracts by the City of New York to other entities to perform services that were previously performed by those NYCHA employees on the grounds that the respondents' decision violates Local Law No. 35 (1994) of the City of New York (NY City Charter § 312 [a]).

By this application, petitioners seek a judgment and declaration that the respondents acted arbitrarily, capriciously and in contravention of Local Law 35 and article V, § 6 of the New York State Constitution along with an order directing respondents to take actions to rescind the contracts in question and to defer from entering into any additional contracts. Petitioners further seek an order directing respondents to restore 232 NYCHA community assistant, associate, and service aide employees terminated by their actions, and to restore and maintain the same level of benefits provided to petitioners' bargaining unit members prior to the judgment in this case. In addition, petitioners seek an order directing respondents to conduct a cost-benefit analysis of using private contractors as compared with the continued employment of civil service employees represented by the union, and to provide said analysis to the Comptroller, the City Council and the union. Lastly, petitioners seek costs for this special proceeding, including disbursements and reasonable attorneys' fees.

In opposition, respondents Michael Bloomberg, as Mayor of the City of New York and Jeanne B. Mullgrav, as Commissioner for the Department of Youth and Community Development (collectively, the city respondents), cross-move to dismiss the amended notice of petition pursuant to CPLR 3211 (a) (7). Re-

spondent Ricardo Elias Morales, former Chairman of respondent New York City Housing Authority, cross-moves to dismiss the amended notice of petition pursuant to CPLR 217, 3211 (a) (5) and 7804 (f). Respondents Police Athletic League (PAL) and Directions for Our Youth (DFOY) have each submitted opposition papers to the amended notice of petition supporting dismissal of the within special proceeding.

## The Parties

Petitioners in this application are comprised of three unions (collectively, the Union or Union petitioners) representing employees of the New York City Housing Authority and three individuals who lost their jobs with NYCHA after layoffs were implemented in early 2009.

Petitioner Lillian Roberts is the Executive Director of District Council 37 American Federation of State, County and Municipal Employees, AFL-CIO (DC 37), an amalgam of 56 local labor unions, and the certified collective bargaining representative for approximately 125,000 members, which include individuals employed by respondents in this special proceeding.

Petitioner Faye Moore is the president of Local 371, Social Services Employees Union (Local 371), an affiliate of DC 37, which represents approximately 17,000 public employees, including 152 community assistants and 142 community associates employed with NYCHA who have been displaced as a result of respondents' plans to "contract out" their work to private contractors.

Petitioner Fitz Reid is president of Local 768, Health Services Employees Union (Local 768), an affiliate of DC 37. Local 768 represents approximately 1,874 public employees, including 78 community service aides employed at NYCHA's community centers who have been displaced as a result of respondents' plans to "contract out" their work to private contractors. Petitioners Richard Sisco and Michael Stanton hold the title of community aide and are represented by Local 768.

Respondent Michael R. Bloomberg is the Mayor of the City of New York. Respondent Jeanne B. Mullgrav is the Commissioner of the New York City Department of Youth and Community Development (DYCD), a mayoral agency created to provide community services to the citizens and residents of the City of New York.

Respondent Ricardo Elias Morales is the former Chairman of the New York City Housing Authority. NYCHA is a municipal

housing authority with powers derived from the Public Housing Law and the provider of affordable, safe housing to low-income New York City residents.[1] NYCHA operates or co-operates a total of 136 community centers throughout the five boroughs of Manhattan. Ninety-four of the community centers are directly operated by NYCHA, and services for the remaining 42 community centers are the product of collaborative efforts between NYCHA and other city agencies and community-based organizations. In addition to the community centers, NYCHA operates 135 senior centers, 43 of which are directly operated, and 92 of which are operated by the New York City Department for the Aging. Collectively, these NYCHA centers provide a variety of recreational, cultural and educational programs to its residents and neighboring communities.

Respondent East New York Development Corporation (East NY Development) is a community-based organization (CBO) located in Brooklyn. East NY Development contracts with respondent DYCD to provide community services at NYCHA community and/or senior centers. Respondent Police Athletic League is a Manhattan-based CBO which has also contracted with NYCHA to provide services at NYCHA's community and/or senior centers.

## Background

Petitioners' complaint stems from the decision made by NYCHA to lay off 232 NYCHA community assistants, community associates,[2] and community aides,[3] and to allow the letting of contracts by the City of New York to other entities to perform the services that were previously performed by the laid-off NYCHA employees.[4]

---

**1.** Created 75 years ago, NYCHA now has 340 developments spanning the five boroughs serving more than 400,000 city residents in more than 175,000 apartments (city respondents' mem of law at 4).

**2.** Community assistants and community associates are titles represented by DC 37 and its affiliates, Local 371 and Local 378.

**3.** Community aides are represented by DC 37 and Local 768.

**4.** Community assistants and community associates are responsible for performing such tasks including peer counseling and placement; preparing reports, evaluations and case records; conducting tenant-management relations; and assisting with community health programs, and community enhancement, improvement, and/or rehabilitation. Community service aides perform tasks including serving as interpreters, visiting elderly residents, coordinating group recreational activities, and performing work with community health programs.

NYCHA is the recipient of federal funding which is used to operate many of its programs. Over the past six years, that federal funding has been reduced by more than $500 million (Jan. 13, 2009 press release, petition, exhibit B). The reduction of funding required NYCHA to make the difficult determination to close many of its community centers and undertake a planned layoff of more than 200 NYCHA employees in the titles of community assistant, community associate, and community service aide (amended petition ¶¶ 17, 20-23).

On September 15, 2008, the Union met with NYCHA, at which time NYCHA's General Manager, Dennis Apple, indicated to the Union that cuts in federal funding were forcing NYCHA to cut expenses and impose layoffs and closures of community centers.

The Union-NYCHA discussions continued in November of 2008, where NYCHA reported the anticipated layoff of approximately 240 bargaining unit members. NYCHA also reported at that meeting that they were exploring the possibility of securing funding from other city agencies, such as respondent DYCD and the Department for the Aging, in order to keep the centers open.

A total of 19 of NYCHA's community centers were slated for closure as of January 2009. These closures were avoided in late December of 2008 however, when DYCD agreed to provide youth services at 25 of the community centers previously operated by NYCHA, at a cost in city tax-levied funds of $12.25 million provided by the New York City Council (Jan. 13, 2009 press release, petition, exhibit B). The funds allocated by the New York City Council were shared between NYCHA and DYCD. Seven million dollars was made payable to NYCHA for rent and operating costs. The remaining $5 million was earmarked for use by DYCD to fund an expansion of preexisting city contracts with Beacon programs, the designated operator of satellite programs in the NYCHA space (amended petition ¶¶ 26-28; Jan. 13, 2009 press release, petition, exhibit B). For the calendar year 2010, DYCD will request bids from contractors to run programs at NYCHA sites (amended petition ¶¶ 29-30), and the overall number of community centers operated by NYCHA will be reduced by 25 sites (*id.* ¶ 37).

Although the Union believed that its members would not be laid off under the new plan, the City respondents maintained that the expansion of programming would not affect the planned layoffs. On January 2, 2009, the City respondents sent the

Union a layoff notice indicating that effective Friday, February 20, 2009, NYCHA was laying off 232 bargaining unit members (amended petition, exhibit A).[5]

On January 29, 2009, petitioners sent a letter to the Board of Collective Bargaining (BCB)[6] seeking arbitration of the applicable collective bargaining agreement, the Memorandum of Economic Agreement (MEA). (City respondents' mem of law at 5-6, appendix B.) Petitioners' dispute in that letter is framed as follows:

> "Whether the New York City Housing Authority ('NYCHA'), the Department of Youth and Community Development ('DYCD') and the City of New York, (collectively, 'the City') violated the terms of Section 11 of the MEA regarding the letting of contracts to community-based organizations to provide community services, presently performed by DC 37 represented City employees in that
>
> "1. the City has caused DC 37 represented employees of NYCHA to be involuntarily displaced, as a result of contracting-out services to community centers previously provided by the affected employees;
>
> "2. the City failed to provide the requisite 90-day advanced notice of the services being contracted out which may adversely affect the MEA covered employees;
>
> "3. the failure to provide the Union with advanced notice of their intentions to let the above-described contract denied the Union the ability to review the plans for letting said contracts; and
>
> "4. the City failed to provide the Union with information to enable the Union to prepare a proposal designed to demonstrate the cost effectiveness of keeping the work in-house." (City respondents' mem of law, appendix B.)

---

**5.** Individual layoff notices were sent contemporaneously with the Union's layoff notice.

**6.** The Board of Collective Bargaining is a seven-member tripartite body created by New York City Charter § 1171. The BCB is comprised of two board members who represent the City's unions, two members who represent the employer, and three impartial members, including the BCB chair. The BCB is empowered to determine whether a controversy arising between the unions and the employer is subject to arbitration (Administrative Code of City of NY § 12-309 [a] [3]; city respondents' mem of law at 6).

On January 28, 2009, petitioners sent a similar notice to arbitrate to NYCHA, DYCD, and the City's Office of Labor Relations (*id.*, appendix C). Petitioners' dispute, as set forth in the January 28 letter, is framed as follows:

"Whether the New York City Housing Authority ('NYCHA'), the Department of Youth and Community Development ('DYCD') and the City of New York, (collectively, 'the City') violated the terms of Section 11 of the MEA and the MOA regarding the letting of contracts to community-based organizations to provide community services through DYCD-funded programs and/or through community-based organizations in that:

"1. the City has caused DC 37 represented employees of NYCHA to be involuntarily displaced, as a result of contracting-out services to community centers previously provided by the affected employees;

"2. the City failed to provide the requisite 90-day advanced notice of the services being contracted out which may adversely affect the MEA covered employees;

"3. the failure to provide the Union with advanced notice of their intentions to let the above-described contract denied the Union the ability to review the plans for letting said contracts; and

"4. the City failed to provide the Union with information to enable the Union to prepare a proposal designed to demonstrate the cost effectiveness of keeping the work in-house." (City respondents' mem of law, appendix C.)

Lastly, petitioners signed an arbitration waiver on February 6, 2009, as required by the New York City Collective Bargaining Law as a prerequisite to invoking arbitration (Administrative Code § 12-301 *et seq.*). The waiver, which was sent to the New York City Office of Collective Bargaining on February 9, 2009, describes the grievance as follows:

"Whether the employer, the New York City Housing Authority, the Department of Youth and Community Development, and the City of New York, (collectively, 'the City') violated the terms of section 11 of the MEA regarding the letting of contracts to community-based organizations to provide community service, presently performed by DC 37, and

if so, what shall be the remedy?'' (City respondents' mem of law, appendix A.)

On February 10, 2009, petitioners commenced the instant special proceeding in which they seek to resolve the same dispute. Petitioners claim that contrary to the position advanced by respondents, petitioners are not precluded from bringing the instant application because the arbitration provision only applies to the contractual claim in dispute, and not a statutory claim, which is what petitioners claim is solely being advanced in this forum. On March 11, 2009, the City opposed the petitioners' arbitration in a petition to BCB, arguing, among other points, that the waiver could not be filed because of the existence of the instant special proceeding.

The petition, in both its original and amended forms, sets forth five causes of action. The first four causes of action assert violations of Local Law 35. The fifth cause of action alleges a violation of the Merit and Fitness Clause of article V, § 6 of the New York State Constitution.

## Discussion

As a preliminary matter, this court must first consider whether this proceeding is barred by the waivers filed by petitioners when seeking to arbitrate the issues raised in this proceeding.

Under the New York City Collective Bargaining Law, arbitration is the preferred method of resolving disputes arising between the City and the unions who represent city workers (Administrative Code § 12-312). Invocation of the arbitration process, however, requires the grievant and the union to file a waiver (Administrative Code § 12-312 [d]). The waiver provision, which is relevant to this application, reads as follows:

> "d. As a condition to the right of a municipal employee organization to invoke impartial arbitration under such provisions, the grievant or grievants and such organization shall be required to file with the director a written waiver of the right, if any, of said grievant or grievants and said organization to submit *the underlying dispute* to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.'' (*Id.* [emphasis added].)

Petitioners in this application claim that they are not precluded from commencing the instant special proceeding

because it seeks a remedy for a statutory violation and does not advance a contractual claim. Respondents contend that the language of the statute which mandates the waiver of the right to have the underlying dispute heard by another forum was designed to have the arbitration process resolve the entire matter placed in dispute, and not just a fragment of the issues. As such, respondents argue that petitioners' attempt to carve out an exception for addressing statutory or constitutional claims in a separate forum should be rejected.

The Court of Appeals of this State has consistently held that statutes should be interpreted so as to effectuate the intent of the Legislature, construing clear and unambiguous statutory language "so as to give effect to the plain meaning of the words used" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]; *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669, 674-675 [1988]; *Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 106-107 [1997]). The text of the statute remains the best evidence of the Legislature's intent (*Matter of Polan v State of N.Y. Ins. Dept.*, 3 NY3d 54, 58 [2004]).

A plain reading of the waiver provision contained in Administrative Code § 12-312 (d) does not lend itself to petitioners' theory of exemption. The statute dictates that in order to invoke the right to arbitrate, the parties must waive their right to submit "the underlying dispute" to any other administrative or judicial tribunal *except* when enforcing an arbitration award. There is nothing in the language of the statute to support the petitioners' position that claims of statutory or constitutional violation are to be resolved in a different forum.

Moreover, the court is not swayed by petitioners' reference to a 1997 BCB decision which limited a waiver in a particular case to the contractual issues advanced within it. When the focus of a challenged determination turns on the language of the statute itself, the court's primary objective becomes the *legal* interpretation of the statute (*Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173 [1988]), thereby requiring consideration of both the purpose of the enacted legislation and its objectives (*People v Ryan*, 274 NY 149, 152 [1937]). The legislative intent becomes the controlling interest in the analysis, and the reliance placed upon the special competence or expertise of the administrative agency charged with the statute's enforcement and promulgation of interpretive regulations is dramatically reduced (*see Matter of KSLM-Columbus*

*Apts., Inc. v New York State Div. of Hous. & Community Renewal,* 5 NY3d 303, 312 [2005]; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459 [1980]). Agency determinations running counter to the clear wording of a statutory provision are thus afforded little weight (*Matter of Raritan Dev. Corp. v Silva,* 91 NY2d 98, 103 [1997]), and those which completely conflict with the clear wording of a statutory provision are not to be upheld (*id.; Kurcsics,* 49 NY2d 451, 459 [1980]).

The clear wording of the statute called into question, and the existence of only one carefully carved out exclusion, supports respondents' position that the only possible interpretation of the statute is that in order to invoke arbitration of an issue, the *entire* issue must be submitted and a waiver must be executed before arbitration may proceed (*see City of New York v Mac-Donald,* 239 AD2d 274 [1st Dept 1997]). Petitioners submitted a request to arbitrate this matter in February of 2009. They must now arbitrate the matter in dispute in that forum. The instant special proceeding is therefore barred.

Accordingly, it is adjudged that the petition is denied and the proceeding is dismissed as to all respondents, with costs and disbursements to them.